of Justice, and I have the privilege of representing appellant Heather Weyker in these civil cases. Heather Weyker is a former federally deputized law enforcement officer who now faces the potential of financial ruin based on her work on the Human Trafficking Task Force that investigated and prosecuted the plaintiffs in these matters. The context of that underlying crime… Will she be indemnified for… There is no right of indemnification from the federal government, only if appropriated funds are available and the Attorney General, in his or her discretion, decides to do so. So any DEA agent or FBI agent who gets sued has to pay personally, the government? That's correct, Your Honor. That agent can request government indemnification, but that's not guaranteed. What's the empirical information on how often the government pays those judgments? Your Honor, I don't have those statistics, but it is something that is discretionary and subject to appropriated funds as well. You seem to be suggesting that typically the agent pays. I just question whether that's… I think that's right. That is, the rule is that the agent is on the hook. Whether the agent actually pays or not, I don't have that actual data before me today. But even the threat of personal liability is why we have qualified immunity. And in the two issues before this Court, one, whether to recognize a Fourth Amendment Bivens claim and two, whether Officer Weyker is entitled to qualified immunity, I would keep in mind the context of the underlying criminal investigation, a juvenile sex trafficking. As the Human Trafficking Institute points out in its amicus brief, trafficking victims are often severely traumatized when encountered by law enforcement, and that's why the government advocates for a victim-centered approach to human trafficking investigations. Trafficking victims often cannot or will not help bring their traffickers to justice until they trust that the law enforcement officers investigating their cases can provide them with safety and security. Now, on the availability of a Bivens remedy, there are three reasons why this Court should not recognize one. One, most importantly, the Supreme Court has never recognized a Fourth Amendment claim for wrongful prosecution. And two, there's binding precedent in this circuit holding otherwise, the Venns case. The Venns case holds that the criminal justice system is a special factor precluding a Bivens remedy. And third, Your Honors, the involvement of Congress in the criminal justice system and human trafficking. Congress has legislated frequently and intensively in these areas, yet never allowed a personal damages remedy in the circumstances presented in this case. And as the Supreme Court said in Abbasi, as long as there are sound reasons to think that Congress might, might doubt the efficacy or necessity of a Bivens remedy, courts should hesitate. And here, we don't just have a special factor, we have multiple special factors. Counsel, you mentioned the difficulty of human trafficking prosecutions, and we actually had the amici kind of made the same point about the victim-centered approach. I guess my question is, why does that matter? I mean, I understand why it matters generally, but I don't understand why it matters for our Bivens analysis. And the reason why I say that is because we're not going to come up with a rule that accepts out Bivens actions for wrongful prosecution on sex trafficking. I think that would be an unworkable rule, but have Bivens for everything else. So I guess my question is, why does it matter to us? I think it matters for, both to the recognition of a Bivens remedy, I'll start with that, and also to qualified immunity. It matters to the recognition of a Bivens remedy because the Supreme Court in Abbasi said you need to look at whether a Bivens remedy in a particular context is going to affect government operations as a whole, and would it intrude into areas where Congress has traditionally spoken. And here, Congress has spoken on human trafficking, beginning with the Trafficking Victims Protection Act over 15 years ago. Congress has repeatedly legislated in the area of human trafficking. So that, I think, is one reason that Congress has been involved in this area, and Congress has created private rights of action for victims of trafficking, but not for anyone supposedly wrongly accused of trafficking. So that, I think, goes to the point of whether or not to recognize a Bivens remedy. On qualified immunity, I think the human trafficking aspect is especially important to whether there's a clearly established constitutional violation. The facts alleged in the complaint, the well-pled facts at least, we're not disputing that Officer Weicker met repeatedly with the victims. We're not disputing that she may have helped a victim obtain money from a victim compensation fund, but if you look at the amici brief, you see that these are actions that you would expect an officer to take in a human trafficking investigation. Unlike, say, a victim of burglary who has no reason not to talk openly, immediately with a law enforcement officer, a victim of human trafficking is often severely traumatized. They're terrified of their traffickers. Sometimes they don't even identify human trafficking victims at first, and an officer in that situation needs to build trust. As the Supreme Court recently said in several cases earlier this year, DC versus Wesby and Casella versus Hughes, when you look at whether the law is clearly established, you have to look at the specific circumstances confronted by the officer. It's not enough, as plaintiffs say here, to say that you can't lie or you can't fabricate evidence. That doesn't put Officer Weicker on notice or any reasonable officer of what to do here. And this was a fraught situation with human trafficking victims. Yes, again, we don't dispute that they may have given conflicting accounts of what happened here. But it's the court's responsibility to sort out conflicting testimony and judge credibility, not an investigating officer. An investigating officer is concerned only with probable cause. And when qualified immunity is at stake, all we need is arguable probable cause. And turning back to the availability of a Bivens remedy, I think as I said, all we need is one special factor according to the Supreme Court to preclude a Bivens remedy. And here again, we have many special factors. And probably the most important special factor is that there are alternative processes here for the plaintiffs to vindicate their rights. As this court said in Venn's, the criminal justice system is an alternative process. Here, the criminal defendants made multiple motions to exclude evidence, to dismiss the indictments. And each and every time, at least based on the allegations that are currently before here, the criminal court rejected those motions. And in fact, one of the most critical issues in this case that the civil complaints raise is Jane Doe II's age. But in the end, when there was a motion to dismiss, motion to acquit based on Jane Doe II's age, the federal criminal court said that there was sufficient evidence presented that a jury could conclude that Jane Doe II was underage at the time. And even the Sixth Circuit, as critical as it was, the Sixth Circuit said Jane Doe II's age still is not known. Maybe she's underage, maybe she's not. We go on her, this issue is not beyond debate. You can't say if a federal judge, if an appellate panel and a federal jury could reasonably conclude that Jane Doe II was underage, then it necessarily follows that Officer Weicker is entitled to qualified immunity. Well, now you're switching. I thought you were talking about a special factor under Bivens. I was transitioning over to that, your honor. And to- Why don't we stick with Bivens and then you could, might be a little easier to follow if we do one at a time. Sure, well sticking with Bivens, first that alternative process, your honor. I think the criminal justice system, one is an alternative process here. The Hyde Amendment, the Unjust Conviction Act, these are all areas where Congress has spoken. And I know plaintiffs have said, well hey, some of these laws don't apply to us. Well, that's actually all the more reason this court should hesitate to create a Bivens remedy. If Congress has spoken in an area and Congress has made a deliberate choice to limit the availability of these potential remedies, then this is exactly the situation that the court in Abbasi said that lower court should not supplement what Congress did with an additional Bivens remedy. The problem with that, though, is the Supreme Court's recent decision arguably scales back Bivens. Or it scales back, it urges courts to think about not extending Bivens. And it could well be the case, and this is why legislative intent is fraught with all kinds of pitfalls. But it could be the case that the reason why there's nothing specifically addressing this is because Congress may have assumed there's a Bivens action. And that a Bivens action would fully compensate the plaintiffs in a situation like this. What's wrong with that analysis? Well, I think what's wrong with that analysis is that as long as there might, the standard is low for judging hesitation here. As long as there is a reason to consider that Congress might have doubted the necessity of a Bivens remedy. And I think actually looking at the legislative history, Chairman Hyde said that his amendment, the Hyde Amendment, strikes the appropriate balance between compensating wronged prosecutions and preventing chilling of hard cases. Chairman Hyde actually cited sex abuse cases and rape cases saying, look, we don't want to over deter prosecution of difficult to prove cases. So I think when you do look at the legislative history that supports our case too, that Congress did hesitate here in making a more expansive remedy. That this wasn't something that was a mistake or inadvertent. So that I think is very much a special factor of all these alternative processes. Another special factor, as this court noted in Bivens, is that it has, again, the potential to chill investigations. That alone is a separate factor. And that's something that the Supreme Court has mentioned time and time again. That the next time a situation comes along like this, in a difficult situation where an officer encounters potential human trafficking victims, we don't want an officer not to investigate that case. We want an officer to vigorously go forward and investigate and use that victim-centered approach. And by allowing a Bivens remedy, that could chill law enforcement officers. Another special factor mentioned by Venns that the Supreme Court has also talked about is the impact on government operations. And specifically, Venns noted that allowing a Bivens remedy in a situation like this could open the floodgates of litigation. Here, anyone who claims they were wrongly prosecuted could sue the officers who investigated them. And that again should cause pause or hesitation to think about the potential impact that this could have on Bivens litigation. So I think there are a lot of reasons why that this court should hesitate. And again, you only need one reason to hesitate before disallowing a Bivens remedy. Say again why you think the sex trafficking context is a special factor. The sex trafficking context is a special factor for two reasons. One, Congress has legislated extensively in the area, created private rights of action for other individuals, but not the plaintiffs here. So when Congress has legislated extensively in an area as human trafficking, just like Abbasi was national security, court should not infer an additional Bivens remedy. You mean created actions for victims? Right, created actions for victims. So the fact that Congress has legislated in an area, that's a situation where Abbasi has said you should not supplement that. So that's one reason the human trafficking context is important. The second reason the human trafficking context is important deals with what I said before about the chilling effect. That here, these are difficult cases. These are not your traditional cases, traditional crimes that human trafficking victims suffer a profound level of trauma not found in other cases. And that explains in a lot of situations why trafficking victims give conflicting statements or they're hesitant to acknowledge what happened to them. So that's a special factor too, because we don't want to intrude on an area that could chill law enforcement. And with that, your honor, I will transition to qualified immunity. So you think that there might be reasons to hesitate in creating a Bivens action on a claim that an investigator fabricated evidence in a sex trafficking case, when there wouldn't be such hesitation in say a drug case or some other kind of criminal case? I think that's right. I think human trafficking is unique, and I think that's what the amicus brief points out here. That there's all sorts of science and studies and practice to back this up, that these cases are unique. They require different types of criminal investigation. And this actually is a good segue into qualified immunity, because you mentioned fabrication of evidence. And the question is, what is fabricated here? That's a conclusory allegation that is entitled to zero weight under ICBAL. When you- Why don't we get to qualified immunity if we agreed with you on Bivens? If you agree with us on Bivens, plaintiffs have pled section 1983 claims. So we would ask the court to one hold that there is no Bivens remedy available, and then to the extent that plaintiffs have section 1983 claims, qualified immunity would bar those. So they have pled 1983 claims. But I thought the district court hadn't resolved yet whether they had a cause of action or section 1983. The district court did not, but qualified immunity has been raised, and that's appropriately before this court. So if this court says qualified immunity protects Officer Weicker, then there's no reason to remand this for whether 1983 cause of action exists. Even assuming a cause of action exists, that's what we're saying here today. We're not disputing, at least before this court, that a 1983 cause of action exists. But qualified immunity would bar those claims. And going back to this argument, as I was saying, when plaintiffs- Can we decide as a matter of law, to get back to Judge Carlton's question, can we decide as a matter of law without getting to qualified immunity, that section 1983 isn't available because this falls into the Bivens, would have otherwise fallen into the Bivens pot? Your Honor, although we raised that argument vigorously in district court, we have not pursued that before this court. So I leave that to the court's discretion, but we are not asking the court to do that here. In our briefs, we just did not address that. But we could let the district court decide that before we get into these Fourth Amendment issues with six different plaintiffs, couldn't we? I don't think so, Your Honor, because qualified immunity has to be resolved at the earliest possible stage of the litigation. And here, the district court has already ruled that qualified immunity does not apply to Officer Weicker. So sending it back to district court, I think we're probably going to, if the district court holds that there's a 1983 cause of action. Then it would come back up, but if the court held that there was not, then presumably the case would be dismissed, and it would depend on whether the plaintiffs appeal. That's correct. I think because this issue is before the court, we would request that qualified immunity be addressed here. All right, go ahead. You may address it. Because again, too, because qualified immunity should be resolved at the earliest possible stage of the litigation, I don't think it's fair to Officer Weicker to have this remanded and then possibly come back up here for an issue that's already been decided. And with qualified immunity, we're talking, plaintiffs repeat a lot about fabrication of evidence, but they don't say what was actually fabricated here. Yeah, they do. They say, for example, on Yassen's case, that the officer called down and reported the alleged victim in that situation. And there's no question, looking at Yassen's complaint, that Yassen's complaint says that alleged victim was a linchpin to the human trafficking investigation. And they said the manufactured human trafficking investigation. They all tie that back to all three plaintiffs here. They may have different claims, but all of them, their complaints, all cite the same provisions in the Sixth Circuit opinion. That's how they justify their claims. But the Sixth Circuit opinion was asking a much different question than is before this court. The Sixth Circuit opinion said, looking back in hindsight over everything, did the government prove beyond a reasonable doubt that the defendants committed the crimes? And the Sixth Circuit said no, at least on the charge of a unified conspiracy. The Sixth Circuit said the government proved at most multiple conspiracies. And again, if there was probable cause, any probable cause for any crime, Officer Weicker's entitled to qualified immunity. And the fact that the district court and the appellate court held that there was at least arguable probable cause for multiple sex trafficking conspiracies, that's why she's entitled to qualified immunity. It would be one thing if Officer Weicker made up Jane Doe 2 completely, but that's not the case here. Jane Doe 2 did testify, maybe her testimony was inconsistent at times, but that's not a reason to deny qualified immunity to Officer Weicker. Especially given the undisputed facts here that these young women were having sex with multiple men across state lines, accompanied by members of a criminal gang. Nobody in the criminal trial disputed those facts here. They didn't say you got the wrong guy. They blamed it on the victims. They said, look, these girls were promiscuous. They did this for their own sexual pleasure. That there was no money exchanged here. Nobody forced them to do that. And again, Your Honor, looking at those facts, there's certainly arguable probable cause to show that a crime was committed, and Officer Weicker should be granted qualified immunity. Reserve the remaining time for rebuttal. Thank you. You may. Thank you for your argument. Mr. Newville, we'll hear from you. Thank you, Judge Colleton. Good morning. May it please the court, counsel, Joshua Newville for Medea Law on behalf of Ifrah Asin. I have six minutes to discuss Ms. Asin's case. Ms. Asin's case is very different than the other two counsel's cases that are going to be argued afterwards. It's basically a jurisdictional case. Nowhere in the 18 minutes or 17 minutes that counsel argued or in the 50 plus pages of briefing did they discuss in any substantive manner Ms. Asin's case. Ms. Asin's case is not one of an arrest pursuant to legal process. Therefore, both of the issues and all of the argument made by counsel and Ms. Weicker in her appeal, in her principle brief, as well as her reply, is irrelevant. This is not a Frank's claim. This is a standard warrantless arrest made without probable cause, standard Fourth Amendment claim. And Ms. Weicker, we allege, was acting in her capacity as a St. Paul police officer to the extent that the district court, after discovery, determines that she was acting in her federal capacity, there may be a Bivens claim, but we pled that in the alternative. This is a Fourth Amendment warrantless arrest claim, plain and simple. There is no argument that has been made that I can respond to to address the- Well, what did the district court say was your cause of action? Fourth Amendment warrantless arrest? No, but what was your cause of action? Bivens? No, she specifically withheld ruling on that. I think the note, footnote five, I believe, just going to grab you the. In fact, she specifically wrote, because a Fourth Amendment claim in this case does not present a new context for a Bivens action, and because 1983 and Bivens claims are analyzed similarly, the court does not reach the question of whether Yassine's claim should be brought under 1983 or Bivens. District court reserved ruling on this issue because, as is common, and as this court's pointed out in Solomon v. Perry, the, you know, Bivens and 1983 actions in the Fourth Amendment context are analyzed almost identically. So, you know, this is a highly intensive factual inquiry that we need discovery for to determine whether she was acting in her federal or, you know, local capacity. She picked up the phone, called Officer Beeks from Minneapolis Police Department and identified herself as a St. Paul police officer. She didn't mention anything about a DOJ or FBI task force of any sort. The, again, this is a warrantless arrest claim. Ms. Yassine was not arrested pursuant to an indictment. She wasn't a sex trafficking suspect. She was out of the country for the bulk of the, you know, the duration of this investigation. She happened to be in the wrong place at the wrong time. Some friends of hers got into a scuffle with the key witness for Officer Weicker in this investigation. She called 911, my client, that is, called 911 as the victim of a state felony assault. She was attacked with a knife by this key witness. She calls 911. Minneapolis Police respond. And when they show up in the interim there, that witness called Officer Weicker. Weicker then intercepted and tells him, hey, I have information and documentation that this person, my client, who she had never heard of before, I have information and documentation that this person is interfering in a federal investigation. Counsel, I want to go back to your jurisdictional argument. You may well, as you mentioned, went on forfeiture that the government doesn't specifically, or Ms. Weicker doesn't specifically address your client's claim. You may very well win on the fact that this is, that we should extend Bivens here to this particular context. But I don't understand the jurisdictional argument. So I don't know if you can, and I read the brief, I don't know if you can enlighten me and explain to me exactly why we would lack appellate jurisdiction, given that the district court said this is either Bivens or Section 1983, and you've got a qualified immunity question pending out there. The way that this court, the way that the Eighth Circuit has characterized these circumstances is a lack of jurisdiction. It's not in the traditional sense a jurisdictional argument, but that's the way that the Eighth Circuit has described it, the words that the Eighth Circuit has used. If you don't make arguments in your principal brief, you've waived them, and that's effectively a jurisdictional problem, is what the Eighth Circuit has said. I see. So you're making basically a forfeiture or waiver argument at bottom and sort of labeling it in a, I just wanted to, I wanted to understand whether you're making the argument that we lack the power to even hear the case at all, had the arguments been made. Under this court's precedents, and Judge Coliton's written extensively on this, but under this court's precedents, the Eighth Circuit isn't about to dig into and make arguments for an appellant who hasn't made them. And in this case, that just didn't happen. Now, I want to respond to one other thing you just said there, Judge Coliton. The Bivens issue, we're not looking to create any Bivens thing here. Bivens was a Fourth Amendment warrantless arrest case. This is a Fourth Amendment warrantless arrest case. I mean, you know, I understand that the five other plaintiffs were indicted, but Ms. Yacine was arrested without a warrant, without, you know, legal process of any kind. And so we're just not in, in any remote, you know, creating new Bivens kind of territory. Oh, that's true. But there was, there were different facts in Bivens. There was the handcuffing of a man or a suspect without, without a warrant in his home. I don't think we have those facts here. Now, so there is at least a modest extension. It's much closer than the other, the other defendants here, but there's a modest difference in these cases. There are thousands of different cases that have proceeded after Bivens that have different facts than Bivens itself. I don't think, don't think this is so remote from Bivens that, you know, we're in that territory. I'll see the rest of my time. The little bit's left. Very well. Thank you, Mr. Neuvel. Mr. Ehrlbeck, we'll hear from you. Good morning, Your Honors. May it please the Court. My name is Andrew Ehrlbeck. I represent Ms. Hamdi Osman in this case. I'll note that on a lot of the docket, she was given the appellation Mr. That's been corrected, but Ms. Hamdi Osman is a woman. Ms. Osman was also the first person to bring suit in this series of cases, and that's why at the District Court, her opinion went first, and many of the later opinions from Judge Erickson reference the Osman opinion. The Osman case, our case, came first. To address an issue that Your Honor asked about early on, the government's attorney, what they didn't tell you in response to your question about indemnification, is that Ms. Weicker is a St. Paul police officer. She's not a federal agent, and I don't bring this up to talk about indemnification because that issue is not before the Court, but it keys in on a major factor in all of these cases, which is that all of the investigative work that was done by Officer Weicker was done as a St. Paul officer before she was deputized. She was deputized shortly before the indictments were issued and remained deputized for certain things after that. Because of that, it is a very fact-intensive inquiry when she was acting under color of state law for Section 1983 versus when she was acting under color of federal law for Bivens. Furthermore . . . So if we decide that we're not going to extend Bivens, there's . . . the government made the argument there's still Section 1983 claims sitting out there. Wouldn't the prudent, from your client's perspective and perhaps not from the government, wouldn't the prudent thing be to send it back to the District Court so the District Court could make the determination as to what is Section 1983 and what would be Bivens? Your Honor, certainly that would be the prudent, efficient decision by the Court. I do agree with Mr. Levine that qualified immunity was decided by the District Court because the District Court said, well, certainly you have Section 1983 claims covering all of the conduct during the investigation up to the indictments. After that, under review before this Court, of course, is the District Court's finding that this is not a new context for Bivens. Bivens was a Fourth Amendment case about street-level agents to make sure that street-level federal agents play by the basic Fourth Amendment rules, which is almost an exact quote from Ziegler and Abbasi when summarizing the purpose of Bivens. So, I point all of that out to make clear the timeline and why that timeline is critical to the fact-intensive inquiry where Section 1983 plays in and where Bivens plays in. And I want to talk for a moment about materiality in the Fourth Amendment context because I think it dovetails with this timeline. Osmond, Ms. Osmond, and I think all of the other appellees were careful not to plead grand jury testimony specifically in their complaint. Grand jury testimony is sealed. Grand jury testimony is the subject of absolute immunity. And great energy by the government was spent in the District Court arguing for absolute immunity. Some reference was made to grand jury transcripts. Of course, what was presented to the grand jury is where the crux of an initial probable cause decision is made. But knowing of the absolute immunity doctrine, Ms. Osmond was careful to plead the investigative fabrications, the coercing of the witnesses that led to the indictments so as to avoid absolute immunity. Absolute immunity is not under review before this court, but the government spends significant time and ink in their reply brief arguing that Ms. Osmond has not pled materiality because she hasn't cited to all of the facts in the grand jury transcripts which are sealed. There's no legal authority provided by the appellant, none, for the idea that a 1983 or Bivens plaintiff alleging that they were arrested without arguable probable cause based on fabricated evidence must, in order to plead materiality, plead the details of the grand jury transcripts. That's absurd. Can I ask you one question about that? I know that we're going to flip flop back and forth a little bit here, and I apologize for that. But isn't that a darn good reason? As I was reading this case, that seems to me to be a very good reason not to extend Bivens. In other words, the exact argument you're making, which is the requirement of going in and looking at grand jury proceedings, private investigatory techniques, things like that, is very, very different from Bivens itself, even though it was the same cause of action. And isn't that a good reason not to extend Bivens here? It's not because, Your Honor, we can never use as evidence of our claims the grand jury transcripts. They're always going to be the subject of absolute immunity. They're never going to be heavily evaluated or brought into evidence in these cases because the absolute immunity doctrine requires that we support our claims with her conduct during the investigative pre-grand jury phase, and that's what this case turns on, the coercing of witnesses to fabricate evidence. And on the issue of materiality, I will also point out that there's only one overt act in any of the indictments of any specificity attributed to my client, Ms. Osmond, a woman, and that is a 24-hour bus trip by a supposed Jane Doe 3. My client, Ms. Osmond, had no relation to Jane Doe 2, 1, 4, or 5. Only to this Jane Doe 3, only one 24-hour-long bus trip that Jane Doe 3 took to Nashville, my client called Jane Doe 3's mom and said, I did not invite your daughter down here. Please come pick her up. She came and picked her up and took her back. Heather Weicker then coerced Jane Doe 3 to provide different evidence contradicting that, and that was how my client was detained and indicted for five and a half years. I say all of that to say the key to materiality is that Osmond pleaded that without those fabrications, there was not arguable probable cause to arrest or indict her. And that has clearly been pled. It's not required, and there's been no authority provided, that Ms. Osmond must plead every fact from the grand jury that would otherwise defeat probable cause. I've only got three seconds left of my seven minutes, so I'll cede my time. Let me ask you one thing. What do you know about the other three appellees who didn't make an appearance in the Court of Appeals and apparently don't have counsel at this point? I know very little. I know they are represented by another law firm at the district court that that law firm withdrew. All three represented by the same firm? Yes, that's correct. That firm withdrew, and you haven't heard anything from them? No, that's correct. So I don't know where they are or whether those clients are in the United States. I was getting our clients, but I don't know whether those appellees are in the United States or where they are. I have no relation with them. Right. Okay. Thank you. Thank you. Mr. Knutson, we'll hear from you. Thank you, Your Honors. My name is Darren Knutson, and I have the honor to represent Yasin Ahmed Farah in this case. My client's case is different from some of the others, actually from all of the others, in that my client was never charged with being a participant in the alleged sex trafficking conspiracy. He managed to get himself indicted because he had the poor judgment of sending an email to a young lady whose picture he saw on a website that he liked. He thought she looked good. He thought it would be, you know, as a young man will try to attract her attention and get together. Unfortunately, he used the word mission in one of his emails, a word which among young Somalis had an ordinary, common, completely innocent meaning. In other words, what is the point of getting together? What's the mission for our gathering? And he says, I have a good mission for you, meaning we'll have a good time if we get together. Although that itself is disputed, right? There's evidence that says that that was code words that were used to describe the sex trafficking ring, and he says, no, that's just I want to hang out and get together. Well, I understand that. But my client was indicted for lying about what the word meant to him, not what it meant to the other alleged co-conspirators or to the victim. My client had no reason to know that this word had this terrible, awful meaning. All right. So what's that have to do with Waker then? Well, the fact is that the only evidence that was used to bring my client into this email asking about a mission, yes, I did. What does mission mean to you? He said, well, I'd like to hang out. You know, we'd have a good time together. And then she asks, well, do you know these other people? Listing a number of the people alleged to be involved in the sex trafficking conspiracy. And my client truthfully says, yes, I do. I went to high school with some of them. You know, some of us go to the same mosque. I know who they are. They're not friends of mine. We don't hang out. But yeah, I know who they are. Well, that's enough to have my client named an associate of a Somali street gang that he must have known that mission really meant an assignment to go out to turn tricks for Well, what's the purpose of getting together? What are we going to do? So how does that relate to either the Bivens Act question about whether to extend Bivens or whether Weicker gets qualified immunity? Well, it relates to that because my client's contention is that he was arrested, detained, indicted without probable cause in violation of his Fourth Amendment rights. And I think that that brings it very clearly within the context of prior Fourth Amendment cases where a Bivens remedy has been allowed. And is there any false the key claims here that Weicker falsified evidence, fabricated evidence, manipulated folks, et cetera, et cetera. Those are the those are the allegations. Does that apply to your client? And if so, how? I'm trying to get to the root of why you're telling us this. I understand that. And the reason the reason that all applies is. This conspiracy alleged conspiracy got built up and Weicker wants to bring in as many victims, as many defendants as she can. And so she hits upon my guy who had the poor judgment to use the word mission in an email to a woman that he never even met. And Weicker had to know that because she was spending all that time with Jane Doe, too. But the only evidence they have is my client admitting that he actually knew who some of these other people were, the other the alleged conspirators, and that he used the word mission in his email to Jane Doe, too. So what did she do that you allege violated his rights? Well, she she put up evidence and she caused the prosecution to believe that my client knew that the word mission meant something other than what he said it meant. But did she just tell them the facts that you've told us and the prosecutor accepted that as sufficient? Or is there some claim that she fabricated something? Well, the your client. Well, the fact is that, you know, she she said, or at least we believe she said that my client was an an affiliate, an associate of the other defendants or the other alleged conspirators, which was not based. And she had no evidence to to say that he was. I thought you just said that he acknowledged having gone to high school with him. He knew who they were, but that doesn't make him, you know, some kind of participant in a gang or a conspiracy. Well, that's that may be. But I thought you said all she told the prosecutors is that he was an associate. Well, yeah, you know that he was associated with it, but that isn't true, because all he knew, all that was the basis for that was my client's admission that he was acquainted with these people. He knew who they were, not that he had admitted he was actually a participant or an associate. I'm having a lot of trouble figuring out what the violation was. Right now, we have evidence that he was an associate, knew them from before, and he used the word mission, which apparently had a different meaning to some in the ring. She relayed that to the prosecutors. All of that was true. And then she expressed her opinion that maybe he's in or maybe your client's in on it, too. I'm still not seeing where there's falsification or fabrication of evidence anywhere. Well, to the extent that the entire allegation that there was a conspiracy was based upon fabricated evidence, that would apply to my client as well. In qualified immunity, just because the investigator is wrong doesn't mean that the investigator violated your client's constitutional rights. What a reasonable officer would have done under the circumstance. The Supreme Court's repeatedly said, don't second-guess officers. Don't do this hindsight 2020. So I'm just trying to figure out what, I guess, let me ask you this. What's your best argument that there was some fabrication here? I mean, what piece of evidence really is sort of your smoking gun? Well, the allegation that my client was associated with these conspirators and had reason to know that mission had a special meaning. Thank you, Your Honors. Thank you for your argument. Hold on, Mr. Levine. I had one more question for Mr. Neuvel, if you could just step up for a minute. Well, as I understood your argument, you say the government hasn't really even argued anything that's relevant as to your client. That's what you said, right? That's right. What about their argument that when it came to the arrest of your client, they do argue, as I understand it, that the arresting officer independently investigated the situation and made a decision to arrest, and therefore, I gather the argument is what Waker did didn't cause any harm to your client, and therefore, she should have qualified immunity. Isn't that presented? You're right, Your Honor. That is the one paragraph. It's on page 45 of the appellant's brief. All right. What's your response to that? Well, Judge Erickson laid this out very clearly. What Ms. Waker says in briefing is that Officer Beeks performed some sort of independent investigation, but the pleadings, and the police report for that matter, but the pleadings, our complaint, doesn't say that. What it says is that he talked to Waker, or I'm sorry, he talked to Yassin, and that talking to Yassin, he got a call from Officer Waker who said that she had this information, and that he only changed course because of that. He tells Yassin in the car ride that he only changed course because of what she said. The police report indicates that he formulated a plan to talk to them again after talking, meeting my client and the others, after talking to Officer Waker, but it doesn't say that he actually did that. And our complaint certainly doesn't say that he actually did that. And that's why Judge Erickson said, look, this isn't ripe for qualified immunity, certainly at this stage. All right. Thank you for the answer. Mr. Levine, we'll hear from you in rebuttal. Thank you. In rebuttal, I'd like to focus on materiality, because that's the common string that ties all three of these plaintiffs together here. There is no exception in the case law that if you allege a misrepresentation of grand jury proceeding, that you don't have to plead materiality. Materiality is a required element of a claim, and it is their burden to prove materiality. But what about the fact that, and I know there's some dispute, I think, here. Maybe I'm wrong about that, about whether the grand jury proceedings here are open. But if the grand jury proceedings are secret, and you don't have the ability to figure out what actually happened, does that mean they're just out of luck? You can't, you can't, the claim's not available to the plaintiffs, even though it appears that all this evidence could have been fabricated ahead of time, and presented to the grand jury. You just don't know. That's exactly what the Tenth Circuit said in the Breidenbach v. Bullish case, when something was under seal. They said, it's the plaintiff's responsibility to go get that sealed information here, because it's a required element of the claim. But in this case, I don't even think we need to delve into that grand jury material. I think, again, if they can, they have to show materiality, and there's enough evidence outside the grand jury investigation to show that these alleged misrepresentations were not material. Even if you find that the complaints plausibly allege that Officer Weicker lied or fabricated evidence, that's not enough under Franks. They have to show that probable cause still did not exist, not just for the crimes they were charged with, but for any crime. And then Yacine is a good case here. Yacine admits that she and her friends started the fight with the alleged victim in that case. Yacine's complaint, paragraph 11, says she slapped this person. Was there at least arguable probable cause to arrest her for assault? We think so. Likewise, for all the claims about coercing witnesses like the Jane Doe's, again, the criminal courts stated that Jane Doe 2's age was in dispute, that there's enough evidence outside the grand jury context to show that these alleged misrepresentations were not material. And even the district court's acquittal order, the very end, the district court order said, my order does not preclude any state charges based on the assault and rape of Jane Doe 2. So there are other crimes here. And that's what this court recently looked at last year in the case White v. Jackson, where an officer arrested somebody for one crime, and there was a probable cause for that, but there was probable cause for another crime. So looking outside the grand jury record here, there's a mountain of evidence to show that these alleged misrepresentations were not material. And again, it is plaintiff's burden to show this, not Officer Weicker's burden. Plaintiffs have to show this, and they cannot do that here with all the information in the record. And under these circumstances, the plaintiffs cannot show a clearly established constitutional violation. While the record may be complex, qualified immunity really boils down to a simple question, what would a reasonable officer do in a similar situation? And when you look at the situation Officer Weicker confronted, her actions were not objectively unreasonable, and she is therefore entitled to qualified immunity. Thank you. Isn't that a different point than materiality? It is a different point. Your materiality argument is even if what she did was objectively unreasonable, it didn't affect anything. That's right. I think that's right. And I think the two do go tied together. I mean, I think that's- Why are they tied together? I mean, aren't they totally separate? Is it clearly established that these actions that Officer Weicker took, meeting repeatedly with a victim, does that amount to a constitutional violation? So I think that they are a bit tied together, but thank you. Very well. Thank you for your argument. The case is submitted and the court will file an opinion in due course. Thank you to all counsel.